17-2572-cv (L)
*Vioni v. Providence Inv. Mgmt., et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of September, two thousand eighteen.

PRESENT:   ROBERT D. SACK,
           REENA RAGGI,
           DENNY CHIN,
                    *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LISA VIONI,

                    *Plaintiff-Appellant-Cross-
                    Appellee*,

HEDGE CONNECTION, INC.,

                    *Plaintiff,*

                    v.                                17-2572-cv, 17-2636-cv

PROVIDENCE INVESTMENT MANAGEMENT,
LLC, RUSSELL JEFFREY,

                    *Defendants-Appellees-Cross-
                    Appellants,*

PROVIDENCE INVESTMENT PARTNERS, LLC,
AMERICAN CAPITAL STRATEGIES, LTD.,

       *Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT-  COREY S. STARK, Corey Stark PLLC, and
CROSS-APPELLEE:     H.P. Sean Dweck, The Dweck Law Firm, LLP,
           New York, New York.


FOR DEFENDANTS-APPELLEES- NEAL H. KLAUSNER (David S. Greenberg,
CROSS-APPELLANTS:    Jacob P. Freeman, Jacklyn M. Siegel, *on the*
           *brief*), Davis & Gilbert LLP, New York, New
           York.

    Appeal from the United States District Court for the Southern District of

New York (Crotty, *J.*).

    **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

    Plaintiff-appellant Lisa Vioni appeals from a final judgment entered

August 4, 2017, which (1) granted judgment as a matter of law to defendants-appellees

Providence Investment Management, LLC ("PIM") and Russell Jeffrey, and (2)

conditionally granted, in the event of a reversal or remand, a retrial on damages or

remittitur of the jury's award to $150,000.  The jury awarded Vioni $750,000 in *quantum*

*meruit* for her services in facilitating an agreement by American Capital Strategies, Ltd.

("ACAS") to hire Jeffrey and eight PIM employees.  The district court held that Vioni

had not established the reasonable value of her services, and so granted judgment as a

2

matter of law to PIM and Jeffrey. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Vioni is the founder and chief executive officer of Hedge Connection, Inc., a company that specializes in marketing and raising capital for hedge funds. Jeffrey is the founder and principal of PIM, which operated a hedge fund focusing on mortgage-backed securities.

In early 2007, Jeffrey was seeking capital for a new credit fund and real estate investment trust ("REIT"), and asked Vioni to help introduce him to possible investors. Vioni agreed to do so. During an exchange of emails, Jeffrey wrote Vioni that "we should have a discussion about financial considerations. I want you to have comfort and confidence about the whole process so that if a deal is consummated, you are compensated accordingly." App'x at 1134.

Vioni arranged and participated in a conference call, and later an in-person meeting, between Jeffrey and Robert Grunewald, the managing director of ACAS. At the time, Jeffrey did not know Grunewald and had no connections to ACAS. Vioni provided Jeffrey information on ACAS and Grunewald so that Jeffrey could tailor his presentation, and she also provided feedback on PIM materials and paid for the meeting space.

3

By August 10, 2007, Jeffrey and ACAS reached a deal by which ACAS hired Jeffrey and eight PIM employees. Defendants, however, never paid Vioni for her services in bringing the parties together.

In March 2008, Vioni filed this diversity suit against ACAS, Jeffrey, and PIM, alleging claims for breach of contract, *quantum meruit*, and promissory estoppel. *See Vioni v. Am. Capital Strategies Ltd.*, No. 08 Civ. 2950, 2009 WL 174937 (S.D.N.Y. Jan. 23, 2009). The district court dismissed the breach of contract and promissory estoppel claims, *id.*, and granted defendants summary judgment on the *quantum meruit* claim. *See Vioni v. Am. Capital Strategies Ltd.*, No. 08 Civ. 2950, 2011 WL 4444276 (S.D.N.Y. Sept. 26, 2011). The case was appealed and remanded twice. *See Vioni v. Am. Capital Strategies, Ltd. (Vioni I)*, 508 F. App'x 1 (2d Cir. 2013); *Vioni v. Providence Inv. Mgmt., L.L.C. (Vioni II)*, 648 F. App'x 114 (2d Cir. 2016). Ultimately, the only claim that went to trial was Vioni's *quantum meruit* claim against PIM and Jeffrey.

On the second remand, litigation ensued over Vioni's expert witnesses. Eventually, Vioni voluntarily withdrew two of her proposed experts. Accordingly, she was left with only one expert, Robert Warren, who had been identified as a rebuttal witness. During PIM's deposition of Warren, however, he testified that he did not recognize large portions of the expert report that bore his name and that he did not sign the report. On February 24, 2017, before the district court received this testimony, it issued an order denying Vioni's request to call Warren in her case-in-chief. After a

4

conference with the district court on March 2, 2017, Vioni voluntarily withdrew Warren as a rebuttal expert witness, without prejudice to her right to call Warren on her affirmative case.

In an opinion and order filed March 6, 2017, the district court explained its reasoning in denying Vioni's request to call Warren on her direct case. The court concluded that Vioni had failed to show either substantial justification for her failure to make timely disclosure or that the delay was harmless. The court also relied on Warren's deposition testimony that he did not sign what purported to be his report and that he did not recall seeing much of it.

PIM moved for summary judgment, arguing that Vioni could not prove an essential element of her *prima facie* case -- the reasonable value of the services she rendered to PIM -- without expert testimony. Ruling from the bench, the district court denied the motion on March 9, 2017. Trial commenced on March 13, 2017. After the close of evidence, PIM moved for judgment as a matter of law under Federal Rule of Civil Procedure 50, and the district court reserved judgment.

The jury returned a verdict in favor of Vioni, awarding her $750,000 plus interest running from September 23, 2007. PIM and Jeffrey renewed their motion for judgment as a matter of law and requested, in the alternative, that the district court reduce the damages award. On August 2, 2017, the district court granted their motion

5

for judgment as a matter of law, and, in the alternative, conditionally granted a new trial on damages or remittitur reducing the award to $150,000.

On appeal, Vioni argues that the district court erred by (1) precluding her expert testimony, and (2) granting judgment as a matter of law. PIM cross appeals from the district court's failure to include certain language in the jury's special verdict form.

## I.        Preclusion of Expert Testimony

Parties must provide timely disclosure of expert testimony as ordered by the court or, if there is no applicable court order, "at least 90 days before the date set for trial." Fed. R. Civ. P. 26(a)(2)(D)(i). If a party does not make a timely expert disclosure, "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The district court may grant "the extreme sanction of preclusion" of expert testimony when a party fails to make a timely disclosure, *Outley v. City of N.Y.*, 837 F.2d 587, 591 (2d Cir. 1988), but it must first consider four factors: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance," *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (alteration and citation omitted). A district court's order precluding an expert witness based on untimely disclosure is reviewed for abuse of discretion. *Id.*

6

We affirm the denial of Vioni's motion for leave to offer Warren's testimony in her case-in-chief largely for the reasons explained by the district court in its March 6, 2017 order.  The district court did not abuse its discretion in finding that Vioni failed to show substantial justification or harmlessness.  Moreover, we are particularly troubled by the fact that, as the district court noted, Warren testified at his deposition that he did not sign his purported report or remember seeing a majority of it. *See* Fed. R. Civ. P. 26(a)(2)(B) ("this disclosure must be accompanied by a written report -- prepared and signed by the witness").

## II.       Judgment as a Matter of Law

"We review a district court's grant of judgment as a matter of law *de novo*, applying the same standards as the district court." *Caceres v. Port Auth. of New York & New Jersey*, 631 F.3d 620, 622 (2d Cir. 2011).  "Judgment as a matter of law is appropriate when 'a party has been fully heard on an issue' and 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Id.* (quoting Fed. R. Civ. P. 50(a)(1)).  In making this determination, we view the evidence "in the light most favorable" to the non-moving party and give her "the benefit of all reasonable inferences that the jury might have drawn in [her] favor from the evidence." *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001) (citation omitted).

The purpose of the *quantum meruit* doctrine is "to make sure that a person who receives the benefit of services pays the reasonable value of such services to the

7

person who performed them." *Zolotar v. New York Life Ins. Co.*, 576 N.Y.S.2d 850, 854 (1st Dep't 1991). "In order to recover in *quantum meruit* under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citation and internal quotation marks omitted) (emphasis added). The district court held that Vioni had proven the first three elements of her *quantum meruit* claim. The only issue on appeal is whether Vioni established the fourth element: the reasonable value of her services.

Reasonable value is "the amount for which such services could have been purchased from one in the plaintiff's position at the time and place the services were rendered," or "the amount for which the defendant could have obtained services under like circumstances." *Carlino v. Kaplan*, 139 F. Supp. 2d 563, 565 (S.D.N.Y. 2001) (citation and internal quotation marks omitted). This value is generally based on hourly rates, but there are "well-recognized exceptions based on clear and accepted market place conventions." *Id.*

Vioni provided no evidence of the number of hours she spent on the matter or as to the prevailing hourly rates, and instead she opted to prove the reasonable value of her services through market place conventions. The district court

held, and we previously affirmed, that Vioni was limited to recovering the market place

convention of a "finder's fee" or "lift-out fee." *Vioni II*, 648 F. App'x at 117-18. A lift-out

fee is paid to executive recruiters in connection with services that result in the

acquisition of a team of individuals from another firm. The evidence at trial established

that the industry practice for lift-out fees is for the *hiring institution* to pay a fee of 20 to

30 percent of the hired employees' first-year guaranteed or anticipated base and bonus

compensation. Defendants' expert testified that she was "not familiar with any instance

in which the candidate paid [this] fee," App'x at 1288, and that the industry standard for

what a candidate would pay a recruiter for successful placement is "zero," *id.* at 1334.

Vioni provided no evidence of any market place convention for what, if anything, the

candidate, rather than the employer, would pay a recruiter for a successful placement,

nor did she provide any evidentiary support for her position that a candidate would

pay the same rate as a hiring institution. While she sought to rely on defendants' expert

witness, the expert's testimony did not support Vioni's assertion that she was entitled to

the same fee from successful candidates that a hiring institution would have paid.

Vioni failed to present sufficient evidence to support her position that the

jury awarded "the amount for which the defendant could have obtained services under

like circumstances." *Carlino*, 139 F. Supp. 2d at 565. Under these circumstances, we

"cannot assume the terms that the parties" would "have written into a contract" and the

jury was not in the position to impose a fee on the defendants without a clear and

9

accepted market place convention. *Id*. at 566. Indeed, while Vioni perhaps could have identified a viable theory of damages and provided evidence to support an award of damages under that theory, she simply did not do so. Hence, the district court did not err in awarding defendants judgment as a matter of law.

. . .

We have considered Vioni's remaining arguments and find them to be without merit. As we are affirming the district court's judgment, we do not reach defendants' arguments on cross appeal. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

10